UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK - CENTRAL ISLIP DIVISION

-----------------------------------------------------------------X

In Re:

DANIEL STANIASZEK,

               Debtor.

-----------------------------------------------------------------X

Case No. 8-18-77085-ast

Chapter 13

**<u>NOTICE OF MOTION</u>**

       Upon the annexed affirmation of Jenelle C. Arnold, Esq., dated September 30, 2020 and the exhibits annexed thereto, Select Portfolio Servicing, Inc. as servicing agent for Towd Point Mortgage Trust 2018-2, U.S. Bank National Association, as Indenture Trustee, a secured creditor, will move this court before the Judge Honorable Alan S. Trust, United States Bankruptcy Judge, on the 22nd day of October, 2020 at 10:30 AM in the forenoon of that day, or as soon thereafter as counsel may be heard, at the courthouse located at United States Bankruptcy Court, Eastern District of New York,  Alfonse M. D'Amato Federal Courthouse, Courtroom 960,  290 Federal Plaza, Central Islip, New York 11722, for an order pursuant to 362(d)(1), of the Bankruptcy Code modifying the automatic stay so that Select Portfolio Servicing, Inc. as servicing agent for Towd Point Mortgage Trust 2018-2, U.S. Bank National Association, as Indenture Trustee, as secured creditor, can foreclose the mortgage it holds on the premises known as Lot 50 Allegheny Drive, Sierra View, Effort, Pennsylvania 18330 which may also be known as 2876 Allegheny Dr, Effort, PA 18330, on the grounds that (a) Select Portfolio Servicing, Inc. as servicing agent for Towd Point Mortgage Trust 2018-2, U.S. Bank National Association, as

Indenture Trustee is not adequately protected; (b) Debtor has failed to make post-petition payments and (c) for such other and further relief as this Court deems just and proper.

Dated: September 30, 2020

Respectfully submitted,

*/s/ Jenelle C. Arnold*
Jenelle C. Arnold, Bar No.: 5263777
Attorney for Movant
Aldridge Pite, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933
Telephone: (858) 750-7600
Facsimile: (619) 590-1385
Email: JArnold@aldridgepite.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK - CENTRAL ISLIP DIVISION

-----------------------------------------------------------------X          Case No. 8-18-77085-ast

In Re:

Chapter 13

DANIEL STANIASZEK,

               Debtor.

-----------------------------------------------------------------X

## <u>MOTION FOR RELIEF FROM AUTOMATIC STAY</u>
## <u>(REAL PROPERTY)</u>

      SELECT PORTFOLIO SERVICING, INC. AS SERVICING AGENT FOR TOWD POINT
MORTGAGE TRUST 2018-2, U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE
TRUSTEE, ("Creditor") hereby moves this Court, pursuant to 11 U.S.C. § 362(d)(1) and (2) for
relief from the automatic stay with respect to certain real property of the Debtor having an address
of Lot 50 Allegheny Drive, Sierra View, Effort, Pennsylvania 18330 which may also be known as
2876 Allegheny Dr, Effort, PA 18330 (the "Property"), for all purposes allowed by law, the Note
(defined below), the Mortgage (defined below), and applicable law, including but not limited to
the right to foreclose. Attached hereto as Exhibit  is a background information form required by
local rules. In further support of this Motion, the undersigned states the following under penalty
of perjury:

      1.      A petition under Chapter 13 of the United States Bankruptcy Code was filed with
respect to the Debtor on October 18, 2018.

      2.      A Chapter 13 Plan was confirmed on March 14, 2019.

      3.      The Debtor has executed and delivered or is otherwise obligated with respect  to
that certain promissory note in the original principal amount of  $147,000.00 (the "Note").   A
copy of the Note is attached hereto as Exhibit 2.  Creditor is an entity entitled to enforce the Note.

      4.      Pursuant to that certain Mortgage (the "Mortgage"), all obligations (collectively,
the "Obligations") of the Debtor under and with respect to the Note and Mortgage are secured by
the Property. A copy of the Mortgage is attached hereto as Exhibit 3.

5.    The legal description of the Property and recording information is set forth in the Mortgage, a copy of which is attached hereto, and such description and information is incorporated and made a part hereof by reference.

6.    In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Select Portfolio Servicing, Inc. as servicing agent for Towd Point Mortgage Trust 2018-2, U.S. Bank National Association, as Indenture Trustee, who directly or through an agent, has possession of the Note. The Note is either made payable to Movant or has been duly endorsed.

7.    As of June 24, 2020 the outstanding amount of the Obligations less any partial payments or suspense balance is $198,806.36.

8.    The following chart sets forth the number and amount of post-petition payments due pursuant to the terms of the Note that have been missed by the Debtor as of June 24, 2020:

| Number of Missed Payments | From | To | Monthly Payment Amount | Total Missed Payments |
|---|---|---|---|---|
| 4 | 3/1/2020 | 6/1/2020 | $1,380.66 | $5,522.64 |
| Less post-petition partial payments (suspense balance): | | | | ($371.26) |
| Total: | | | | $5,151.38 |

9.    The estimated market value of the Property is $204,186.00.  The basis for such valuation is Debtor(s) Bankruptcy Schedules A/B & D, attached hereto as Exhibit 4.

10.    Upon information and belief, the aggregate amount of encumbrances on the Property listed in the Schedules or otherwise known, including but not limited to the encumbrances granted to Creditor, is $198,806.36.

1.    Cause exists for relief from the automatic stay for the following reasons:

(a.) Debtor has failed to make post-petition payments pursuant to the Confirmed Chapter 13 Plan and Mortgage documents.

(b.) The property is not necessary for reorganization as it is no the Debtor's primary

residence.

(c.) There is not sufficient equity in the Property after taking into consideration the cost of sale.

WHEREFORE, Creditor prays that this Court issue an Order terminating or modifying the stay and granting the following:

1.      Relief from the stay for all purposes allowed by law, the Note, the Mortgage, and applicable law, including but not limited to allowing Creditor (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce it remedies to foreclose upon and obtain possession of the Property;

2.      That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code;

3.      That the 14-day stay described in Bankruptcy Rule 4001(a)(3) be waived;

4.      For such other relief as the Court deems proper.

Dated: September 30, 2020

Respectfully submitted,

*/s/ Jenelle C. Arnold*
Jenelle C. Arnold, Bar No.: 5263777
Attorney for Creditor
Aldridge Pite, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933
Telephone: (858) 750-7600
Facsimile: (619) 590-1385
Email: JArnold@aldridgepite.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK - CENTRAL ISLIP DIVISION

------------------------------------------------------------X          Case No. 8-18-77085-ast

In Re:

                                                                       Chapter 13

DANIEL STANIASZEK,

                           Debtor.                                     Exhibit 1
------------------------------------------------------------X

---

### RELIEF FROM STAY - REAL ESTATE AND COOPERATIVE APARTMENTS

### BACKGROUND INFORMATION

1.  ADDRESS OF REAL PROPERTY OR COOPERATIVE APARTMENT: Lot 50 Allegheny Drive, Sierra View, Effort, Pennsylvania 18330 which may also be known as 2876 Allegheny Dr, Effort, PA 18330

2.  LENDER NAME: Towd Point Mortgage Trust 2018-2, U.S. Bank National Association, as Indenture Trustee

3.  MORTGAGE DATE: April 21, 2004

4.  POST-PETITION PAYMENT ADDRESS: SELECT PORTFOLIO SERVICING INC, P.O Box 65450, Salt Lake City, UT 84165-0450

### DEBT AND VALUE REPRESENTATIONS

5.  TOTAL PRE-PETITION AND POST-PETITION INDEBTEDNESS OF DEBTOR(S) TO MOVANT AS OF THE MOTION FILING DATE: $198,806.36 as of June 24, 2020.
    *(THIS MAY NOT BE RELIED UPON AS A "PAYOFF" QUOTATION.)*

6.  MOVANT'S ESTIMATED MARKET VALUE OF THE REAL PROPERTY OR COOPERATIVE APARTMENT AS OF THE MOTION FILING DATE: $204,186.00

7.  SOURCE OF ESTIMATED MARKET VALUE: Debtor(s) Bankruptcy Schedules A/B & D

*Exhibit 1*

## STATUS OF DEBT AS OF THE PETITION DATE

8.    DEBTOR(S)'S INDEBTEDNESS TO MOVANT AS OF THE PETITION DATE:

|  |  |
|---|---|
| A. TOTAL: | $198,798.64 |
| B. PRINCIPAL: | $198,474.84 |
| C. INTEREST: | $321.76 |
| D. ESCROW (TAXES AND INSURANCE): | $0.00 |
| E. FORCED PLACED INSURANCE EXPENDED BY MOVANT: | $0.00 |
| F. PRE-PETITION ATTORNEY'S FEES CHARGED TO DEBTOR(S): | $0.00 |
| G. PRE-PETITION LATE FEES CHARGED TO DEBTOR(S): | $35.98 |

9.    CONTRACTUAL INTEREST RATE: 4.125 %
*(IF THE INTEREST RATE HAS CHANGED, LIST THE RATE(S) AND DATE(S) THAT EACH RATE WAS IN EFFECT ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM. STATE THE EXHIBIT NUMBER HERE: N/A.)*

10.    OTHER PRE-PETITION FEES, CHARGES OR AMOUNTS CHARGED TO DEBTOR(S)'S ACCOUNT AND NOT LISTED ABOVE:

Less Suspense:    ($33.94)

*(IF ADDITIONAL SPACE IS REQUIRED, LIST THE AMOUNT(S) ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM. STATE THE EXHIBIT NUMBER HERE: N/A.)*

### AMOUNT OF POST-PETITION DEFAULT AS OF THE MOTION FILING DATE
(As of June 24, 2020)

11.    DATE OF RECEIPT OF LAST PAYMENT: March 4, 2020

12.    NUMBER OF PAYMENTS DUE FROM PETITION DATE TO June 24, 2020: TWENTY (20) PAYMENTS.

13.    POST-PETITION PAYMENTS IN DEFAULT: 4

Exhibit 1

| Payment Due Date | Amount Due | Amount Received | Amount Applied to Principal | Amount Applied to Interest | Amount Applied to Escrow | Late Fee Charged |
|---|---|---|---|---|---|---|
| 3/1/2020 | $1,380.66 | n/A | n/A | n/A | n/A | n/A |
| 4/1/2020 | $1,380.66 | n/A | n/A | n/A | n/A | n/A |
| 5/1/2020 | $1,380.66 | n/A | n/A | n/A | n/A | n/A |
| 6/1/2020 | $1,380.66 | n/A | n/A | n/A | n/A | n/A |
| TOTAL: | $5,522.64 | n/A | n/A | n/A | n/A | n/A |

14. OTHER POST-PETITION FEES CHARGED TO DEBTOR(S):

        A. TOTAL:                                         $0.00

        B. ATTORNEYS' FEES IN CONNECTION WITH THIS MOTION:     $0.00

        C. FILING FEE IN CONNECTION WITH THIS MOTION:     $0.00

        D. OTHER POST-PETITION ATTORNEYS' FEES:     $0.00

        E. POST-PETITION INSPECTION FEES:     $0.00

        F. POST-PETITION APPRAISAL/BROKER'S PRICE OPINION FEES:     $0.00

        G. FORCED PLACED INSURANCE EXPENDED BY MOVANT:     $0.00

15. AMOUNT HELD IN SUSPENSE BY MOVANT:         ($371.26)

16. OTHER POST-PETITION FEES, CHARGES OR AMOUNTS CHARGED TO DEBTOR(S)'S ACCOUNT AND NOT LISTED ABOVE: $0.00

*(IF ADDITIONAL SPACE IS REQUIRED, LIST THE AMOUNT(S) ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM. STATE THE EXHIBIT NUMBER HERE: N/A .)*

Exhibit 1

## REQUIRED ATTACHMENTS TO MOTION

PLEASE ATTACH THE FOLLOWING DOCUMENTS TO THIS MOTION AND INDICATE THE EXHIBIT NUMBER ASSOCIATED WITH THE DOCUMENTS.

(1)    COPIES OF DOCUMENTS THAT ESTABLISH MOVANT'S INTEREST IN THIS SUBJECT PROPERTY. FOR PURPOSES OF EXAMPLE ONLY, THIS MAY BE A COMPLETE AND LEGIBLE COPY OF THE PROMISSORY NOTE OR OTHER DEBT INSTRUMENT TOGETHER WITH A COMPLETE AND LEGIBLE COPY OF THE MORTGAGE AND ANY ASSIGNMENTS IN THE CHAIN FROM THE ORIGINAL MORTGAGEE TO THE CURRENT MOVING PARTY. (EXHIBIT 2,3.)

(2)    COPIES OF DOCUMENTS THAT ESTABLISH MOVANT'S STANDING TO BRING THIS MOTION. (EXHIBIT 2,3.)

(3)    COPIES OF DOCUMENTS THAT ESTABLISH THAT MOVANT'S INTEREST IN THE REAL PROPERTY OR COOPERATIVE APARTMENT WAS PERFECTED. FOR THE PURPOSES OF EXAMPLE ONLY, THIS MAY BE A COMPLETE AND LEGIBLE COPY OF THE FINANCING STATEMENT (UCC-1) FILED WITH THE CLERK'S OFFICE OR THE REGISTER OF THE COUNTY IN WHICH THE PROPERTY OR COOPERATIVE APARTMENT IS LOCATED. (EXHIBIT 2,3.)

## DECLARATION AS TO BUSINESS RECORDS

I, _____Lisa Rene Jones_____ , THE _____Document Control Officer_____ OF Select Portfolio Servicing, Inc. as servicing agent for SELECT PORTFOLIO SERVICING, INC., SERVICER FOR  TOWD POINT MORTGAGE TRUST 2018-2, U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE, THE MOVANT HEREIN, DECLARE PURSUANT TO 28 U.S.C. SECTION 1746 UNDER PENALTY OF PERJURY THAT THE INFORMATION PROVIDED IN THIS FORM AND ANY EXHIBITS ATTACHED HERETO (OTHER THAN THE TRANSACTIONAL DOCUMENTS ATTACHED AS REQUIRED BY PARAGRAPHS 1, 2 AND 3, ABOVE) IS DERIVED FROM RECORDS THAT WERE MADE AT OR NEAR THE TIME OF THE OCCURRENCE OF THE MATTERS SET FORTH BY, OR FROM INFORMATION TRANSMITTED BY, A PERSON WITH KNOWLEDGE OF THOSE MATTERS, THAT THE RECORDS WERE KEPT IN THE COURSE OF THE REGULARLY CONDUCTED ACTIVITY; AND THAT THE RECORDS WERE MADE IN THE COURSE OF THE REGULARLY CONDUCTED ACTIVITY AS A REGULAR PRACTICE.

I FURTHER DECLARE THAT COPIES OF ANY TRANSACTIONAL DOCUMENTS ATTACHED TO THIS FORM AS REQUIRED BY PARAGRAPHS 1, 2 AND 3, ABOVE, ARE TRUE AND CORRECT COPIES OF THE ORIGINAL DOCUMENTS.

EXECUTED AT _Salt Lake City_
ON THIS _15th_ DAY OF _September_ 2020

|  |  |
|---|---|
| NAME: | Lisa Rene Jones |
| TITLE: | Document Control Officer |
| COMPANY: | Select Portfolio Servicing, Inc. |
| STREET ADDRESS: | 3217 So. Decker Lake Dr. |
| CITY, STATE AND ZIP CODE: | Salt Lake City, UT  84119 |

## DECLARATION

I, _____Lisa Rene Jones_____, THE **Document Control Officer** OF Select
Portfolio Servicing, Inc. as servicing agent for <u>SELECT PORTFOLIO SERVICING, INC., SERVICER FOR
TOWD POINT MORTGAGE TRUST 2018-2, U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE
TRUSTEE,</u> THE MOVANT HEREIN, DECLARE PURSUANT TO 28 U.S.C. SECTION 1746 UNDER
PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT BASED ON PERSONAL
KNOWLEDGE OF THE MOVANT'S BOOKS AND BUSINESS RECORDS.

EXECUTED AT _Salt Lake City_
ON THIS _15th_ DAY OF _September_ 2020

NAME:
TITLE:
COMPANY:
STREET ADDRESS:
CITY, STATE AND ZIP CODE:

Lisa Rene Jones
Document Control Officer
Select Portfolio Servicing, Inc.

3217 So. Decker Lake Dr.
Salt Lake City, UT  84119





**NOTE**

April 21, 2004 _____ STROUDSBURG , Pennsylvania
                                        CITY                    STATE

LOT 50 ALLEGHENY DRIVE SIERRA VIEW, EFFORT, PA 18330
PROPERTY ADDRESS

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ _147,000.00_ (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is _____Washington Mutual Bank, FA_____ . I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of _5.750_ %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

(A) Time and Place of Payments

I will pay Principal and interest by making a payment every month.

I will make my monthly payment on the _1st_ day of each month beginning on _June, 2004_ .

I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied to as of its scheduled due date and will be applied to interest before Principal. If on May 1st, 2034 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make my monthly payments at _9451 CORBIN AVE. NORTHRIDGE, CA 91324_
_____ , or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ _857.85_ .

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the prepayment amount, before applying my Prepayment to reduce the principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

Page 1 of 4                        ORIGINAL

EXHIBIT 2

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of __15__ calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be __5.000__ % of my overdue payment of Principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by Applicable Law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless Applicable Law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce

EXHIBIT 2

its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10.    UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed ( the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

> If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 11. MISCELLANEOUS PROVISIONS

In the event the Note Holder at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical or ministerial mistake, calculation error, computer error, printing error or similar error (collectively "Errors"), I agree, upon notice from the Note Holder, to reexecute any Loan Documents that are necessary to correct any such Errors and I also agree that I will not hold the Note Holder responsible for any damage to me which may result from any such Errors.

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Note Holder delivers to me an indemnification in my favor, signed by the Note Holder, then I will sign and deliver to the Note Holder a Loan Document identical in form and content which will have the effect of the original for all purposes.

EXHIBIT 2

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

x _____

DANIEL STANIASZEK

Pay to the order of

Without Recourse
WASHINGTON MUTUAL BANK, FA

By _____

BRENDA F. BRENDLE
FIRST VICE PRESIDENT

EXHIBIT 2

RECORDER OF DEEDS
MONROE COUNTY
PENNSYLVANIA

RECORDED ON
2004-17577
INSTRUMENT NUMBER

Apr  22, 2004
12:07:47 PM
BOOK=REC/2187
PAGE=8515
Total Pages: 19

STATE WRIT TAX          $0.50
JGS/ACCESS ID .
JUSTICE                 $10.00
RECORDING FEES          $42.00
AFFORDABLE HOUSING      $13.00
COUNTY ARCHIVES FEE     $2.00
RE0 ARCHIVES FEE        $3.00
TOTAL                   $71.50

71.50  ②
       19P
X 21N

AFTER RECORDING RETURN TO:

Washington Mutual Bank, FA
C/O ACS IMAGE SOLUTIONS
12691 PALA DRIVE MS156DPCA
GARDEN GROVE, CA 92841

2/117052 ————————[Space Above This Line For Recording Data]————————
GATEWAY ABSTRACT , INC. 4849

## MORTGAGE

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined
in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this
document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated _____ April 21, 2004 _____,
together with all Riders to this document.
(B) "Borrower" is DANIEL STANIASZEK _____

_____
_____.

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is_____ Washington Mutual Bank, FA, a federal association _____.
Lender is a _____ Bank _____ organized and existing under the laws
of _____ United States of America _____, Lender's address is:
_____ 400 East Main Street Stockton, CA 95290 _____.
Lender is the mortgagee under this Security Instrument.
(D) "Note" means the promissory note signed by Borrower and dated __ April 21, 2004 __.
The Note states that Borrower owes Lender One Hundred Forty-Seven Thousand & _____
00/100 _____

Dollars (U.S. $ 147,000.00 _____) plus interest. Borrower has promised to pay this debt
in regular Periodic Payments and to pay the debt in full not later than _____ May 1, 2034 _.
(E) "Property" means the property that is described below under the heading "Transfer of Rights
in the Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and
late charges due under the Note, and all sums due under this Security Instrument, plus interest.

PENNSYLVANIA
73238 (08-02)                        Page 1 of 18                     TO BE RECORDED

REC Book 2187 Page 8515

EXHIBIT 3

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider  ☐ Condominium Rider  ☐ 1-4 Family Rider
☐ Graduated Payment Rider  ☐ Planned Unit Development Rider  ☐ Biweekly Payment Rider
☐ Balloon Rider  ☐ Rate Improvement Rider  ☐ Second Home Rider
☐ Other(s) [specify]

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K) "Escrow Items" means those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds, whether by way of judgment, settlement or otherwise, paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note; and (iii) the performance of all

PENNSYLVANIA
73236 (08-02)

TO BE RECORDED

EXHIBIT 3

agreements of Borrower to pay fees and charges arising out of the Loan whether or not herein set forth. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in ___Montgomery___ County, Pennsylvania:

legal description attached here to and made a part here of.

which currently has the address of __LOT 50 ALLEGHENY DRIVE SIERRA VIEW__,
[Street]

____EFFORT____, Pennsylvania ___18330___ ("Property Address"):
[City]                                   [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one of more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or

PENNSYLVANIA
73238 (08-02)                          Page 3 of 18                          TO BE RECORDED

EXHIBIT 3

partial payment insufficient to bring the Loan current. without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future. but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date. then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time. Lender shall either apply such funds or return them to Borrower. If not applied earlier. such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2. all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note: (b) principal due under the Note: (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges. second to any other amounts due under this Security Instrument. and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due. the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding. Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if. and to the extent that. each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments. such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments. insurance proceeds. or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date. or change the amount. of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full. a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property: (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums. if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan. Lender may require that Community Association Dues. Fees. and Assessments. if any. be escrowed by Borrower. and such dues. fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver. Borrower shall pay directly. when and where payable. the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires. shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such

PENNSYLVANIA
73230 (08-02)                             Page 4 of 18                          TO BE RECORDED

REC Book 2187 Page 8519

TACO col TOIS. 7      EXHIBIT 3

payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures

PENNSYLVANIA
73236 (08-02)                                    Page 5 of 18                                    TO BE RECORDED

REC Book 2187 Page 8520

EXHIBIT 3

from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Lender may purchase such insurance from or through any company acceptable to Lender including, without limitation, an affiliate of Lender, and Borrower acknowledges and agrees that Lender's affiliate may receive consideration for such purchase. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such polices shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

Borrower hereby absolutely and irrevocably assigns to Lender all of Borrower's right, title and interest in and to all proceeds from any insurance policy (whether or not the insurance policy

PENNSYLVANIA
73236 (08-02)

Page 6 of 18

TO BE RECORDED

REC Book 2187 Page 8521

EXHIBIT 3

was required by Lender) that are due, paid or payable with respect to any damage to such property, regardless of whether the insurance policy is established before, on or after the date of this Security Instrument. By absolutely and irrevocably assigning to Lender all of Borrower's rights to receive any and all proceeds from any insurance policy, Borrower hereby waives, to the full extent allowed by law, all of Borrower's rights to receive any and all of such insurance proceeds.

Borrower hereby absolutely and irrevocably assigns to Lender all of Borrower's right, title and interest in and to (a) any and all claims, present and future, known or unknown, absolute or contingent, (b) any and all causes of action, (c) any and all judgments and settlements (whether through litigation, mediation, arbitration or otherwise), (d) any and all funds sought against or from any party or parties whosoever, and (e) any and all funds received or receivable in connection with any damage to such property, resulting from any cause or causes whatsoever, including but not limited to, land subsidence, landslide, windstorm, earthquake, fire, flood or any other cause.

Borrower agrees to execute, acknowledge if requested, and deliver to Lender, and/or upon notice from Lender shall request any insurance agency or company that has issued any insurance policy to execute and deliver to Lender, any additional instruments or documents requested by Lender from time to time to evidence Borrower's absolute and irrevocable assignments set forth in this paragraph.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

PENNSYLVANIA
73236 (08-02)                                    Page 7 of 18                              TO BE RECORDED

REC Book 2187 Page 8522

EXHIBIT 3

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, or remove or demolish any building thereon, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in good condition and repair in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property in good and workmanlike manner if damaged to avoid further deterioration or damage. Lender shall, unless otherwise agreed in writing between Lender and Borrower, have the right to hold insurance or condemnation proceeds. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause. Lender does not make any warranty or representation regarding, and assumes no responsibility for, the work done on the Property, and Borrower shall not have any right to rely in any way on any inspection(s) by or for Lender or its agent. Borrower shall be solely responsible for determining that the work is done in a good, thorough, efficient and workmanlike manner in accordance with all applicable laws.

Borrower shall (a) appear in and defend any action or proceeding purporting to affect the security hereof, the Property or the rights or powers of Lender; (b) at Lender's option, assign to Lender, to the extent of Lender's interest, any claims, demands, or causes of action of any kind, and any award, court judgement, or proceeds of settlement of any such claim, demand or cause of action of any kind which Borrower now has or may hereafter acquire arising out of or relating to any interest in the acquisition or ownership of the Property. Lender shall not have any duty to prosecute any such claim, demand or cause of action. Without limiting the foregoing, any such claim, demand or cause of action arising out of or relating to any interest in the acquisition or ownership of the Property may include (i) any such injury or damage to the Property including without limit injury or damage to any structure or improvement situated thereon, (ii) or any claim or cause of action in favor of Borrower which arises out of the transaction financed in whole or in part by the making of the loan secured hereby, (iii) any claim or cause of action in favor of Borrower (except for bodily injury) which arises as a result of any negligent or improper construction, installation or repair of the Property including without limit, any surface or subsurface thereof, or of any building or structure thereon or (iv) any proceeds of insurance, whether or not required by Lender payable as a result of any damage to or otherwise relating to

EXHIBIT 3

the Property or any interest therein. Lender may apply, use or release such monies so received by it in the same manner as provided in Paragraph 5 for the proceeds of insurance.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain

EXHIBIT 3